UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MELINDA HOOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:13-CV-454 |
| ) | (COLLIER/GUYTON) |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13, 14] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15, 16]. Melinda Hooks ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") on April 22, 2010, alleging disability since October 1, 1998, due to severe mood swings, post-traumatic stress disorder, and panic attacks. Her application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ Joan Lawrence in Knoxville,

1

Tennessee on January 24, 2012. The Plaintiff was present and testified. The ALJ issued an unfavorable decision on March 16, 2012, finding the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 1998, the amended alleged onset date. (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: Rectal Prolapse; Vertigo[;] Depression; Anxiety; Bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except due to her mental impairments she can concentrate for two hours at a time; occasionally work with people; can adapt to infrequent change; can understand, remember and carry out both simply and multi-step (1-4 step) detailed tasks; but cannot make independent decisions at an executive level.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on March 8, 1971 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged

disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 1998, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 12-16].

## II. DISABILITY ELIGIBILITY

This case involves an application for disability insurance benefits as well as SSI benefits. An individual qualifies for disability insurance benefits if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

3

twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity that he or she is not only unable to do previous work but cannot, considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the individual lives, or whether a specific job vacancy exists for the individual, or whether the individual would be hired if he or she applied for work. §§ 423(d)(2)(B), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the plaintiff could perform.

4

Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

III.  **STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

5

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   POSITIONS OF THE PARTIES

The Plaintiff raises a single allegation of error on appeal. The Plaintiff submits that the ALJ committed reversible error because the decision fails to explain whether, or how, the ALJ considered the consultative examiner's opinion that the Plaintiff requires frequent bathroom breaks. [Doc. 14 at 7]. The Plaintiff contends that such failure was not harmless and that vocational testimony would be necessary, which was not conducted during the hearing before the ALJ, to determine the effect frequent bathroom breaks would have on the Plaintiff's ability to

6

work. [Id. 10-11].

The Commissioner argues that the ALJ properly considered the medical evidence of record in assessing the Plaintiff's RFC, including the consultative examiner's opinion, and therefore the ALJ's decision is supported by substantial evidence. [Doc. 16 at 5]. As a result, the Commissioner maintains that the ALJ properly relied on the Medical-Vocational Guidelines, rather than consult vocational expert testimony, to determine at step five of the sequential evaluation that other work existed in the national economy that the Plaintiff was capable of performing given her RFC. [Id. at 8-10].

V.    ANALYSIS

The Plaintiff has a history of irritable bowel syndrome and chronic problems with diarrhea and vomiting. [Tr. 258, 327]. She also suffers from rectal prolapse which required surgery in November 2009, resulting in the removal of part of her colon. [Tr. 264].

In a Bowel/Incontinence Questionnaire completed by the Plaintiff on June 2, 2010, the Plaintiff related that she has seven to nine bowel movements in a 24-hour period and that as a result, she must stay close to a bathroom. [Tr. 150]. While the Plaintiff can control when she has a bowel movement "most of the time," she explained that they sometimes come on suddenly, causing her to soil her clothing at least once or twice a week. [Id.]. During the January 24, 2012 hearing before the ALJ, the Plaintiff testified that she has four to five accidents a week because she experiences diarrhea sporadically. [Tr. 28]. She further testified that she has to wear adult diapers. [Id.].

On July 14, 2010, the Plaintiff presented for a consultative examination with Jeffrey Summers, M.D. [Tr. 341-42]. Dr. Summers observed that following the Plaintiff's November 2009 surgery, she continued to have mild incontinence of stool and has to wear an adult diaper or

7

pad due to her condition. [Tr. 341]. Dr. Summers noted that the Plaintiff's condition had improved following her surgery, but that she still continued to have small amounts of fecal incontinence. [Tr. 342]. In conclusion, Dr. Summers opined that the Plaintiff's examination was unremarkable and that based upon her history and examination, he would not place any work related restrictions upon the Plaintiff except that "[s]he should be allowed frequent bathroom breaks in the work place[] and avoid heavy lifting." [Id.].

A nontreating, nonexamining state agency physician completed a form entitled "Physical Residual Functional Capacity Assessment" on September 24, 2012, wherein the physician opined that the Plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and/or sit six hours in an eight-hour workday; and push and/or pull with unlimited ability. [Tr. 368]. The assessment explained that heavy lifting should be avoided because it would cause fecal incontinence, per Dr. Summers' opinion. [Tr. 368, 375].

In the disability determination, the ALJ summarized the above opinions, and while he assigned "great weight" to the opinion of the state agency physician because such opinion was found to be consistent with objective evidence and the record as a whole [Tr. 15], she did not specify an assignment of weight or make any specific findings regarding Dr. Summers' opinion. [Id.].

The Court observes that as a one-time examiner, Dr. Summers' opinion was not entitled to any "special degree of deference." See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994); see also Podewils v. Colvin, No. 3:12-CV-235, 2013 WL 4857742, at *6 (E.D. Tenn. Sept. 11, 2013) ("Unlike treating sources, an opinion from a one-time examiner does not receive special deference or weight."). Nonetheless, under the Social Security Act and its implementing regulations, the opinion of an examining source is generally given more weight than the opinion

8

of a source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). The weight assigned to an examining source will depend on the opinion's supportability, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors which may support or undermine the opinion. § 404.1527(c)(3)—(6). "The better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given. § 404.1527(c)(3). In addition, "the more consistent an opinion is with the record as a whole, the more weight" the opinion will be entitled to. § 404.1527(c)(4).

The Court finds the ALJ's failure to weigh Dr. Summers' opinion was error. Unless a treating source's opinion is given controlling weight, an ALJ must explain the "the weight given to the opinions of a state agency medical or psychological consultant." 20 C.F.R. § 416.927(e)(2)(ii). Because the ALJ's decision makes no findings regarding Dr. Summers' work-related limitation that the Plaintiff required frequent bathroom breaks, the Court is precluded from undertaking any meaningful substantial evidence review as it relates to the Plaintiff's need for frequent bathroom breaks. See Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009) (holding that "the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in 'meaningful review' of the ALJ's decision") (quoting Wilson, 378 F.3d at 544).

Arguing that "substantial evidence supports [the ALJ's] decision not to incorporate Dr. Summers' limitation for frequent bathroom breaks," the Commissioner asserts that "the ALJ is not required to justify her reasoning if she disregards a portion of an examiner's opinion, so long as the ALJ's finding is supported by substantial evidence." [Doc. 16 at 7]. The Court is not persuaded. Social Security Ruling 96-8p provides, "The RFC assessment must include a

9

*discussion* of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must *explain* why the opinion was not adopted." 1996 WL 374184, at *7 (1996) (emphasis added). No such discussion or explanation was provided here. If the ALJ was convinced that the Plaintiff's need for frequent bathroom breaks was not a credible limitation or would not impact her ability to work, then the ALJ should have stated as much. The decision also ignores the Plaintiff's testimony that she must stay close to a bathroom, furthering undermining the contention that the ALJ consider the limitation but found it was not credible. This is not to say that the Court believes a finding of disabled should have been made by the ALJ. As the decision stands, however, there is no indication whether the ALJ disregarded the limitation because it was not credible or whether the limitation was ignored or overlooked.

The Commissioner also contends that Dr. Summers' opinion is inconsistent with the record as a whole. [Doc. 16 at 8]. The Court finds this argument similarly lacking. First, there is no evidence, medical or otherwise, which contradicts Dr. Summers' opinion that the Plaintiff requires frequent bathroom breaks. The Commissioner cites to noted improvement after Plaintiff's surgery in 2009 [see id. at 8], but such evidence does not contradict the need for frequent bathroom breaks. Dr. Summers acknowledged improvement following the Plaintiff's surgery, but nonetheless opined the need for frequent bathroom breaks. [Tr. 342]. The Commissioner also asserts that the Plaintiff's reporting of seven to nine bowel movements in a 24-hour period would only average to two to three bathroom breaks during eight-hour workday, also undermining the need for frequent bathroom breaks. [Id.]. The Plaintiff testified, however, that her bowel movements are sporadic, and thus, there is no support in the contention that

10

Plaintiff would only experience two to three bowel movements during a regular workday. Second, and perhaps more importantly, the alleged inconsistences argued by the Commissioner only serve as *post-hoc* rationalization for the ALJ's conclusion, which the Court is precluded from considering. See Hyatt Corp. v. N.L.R.B., 939 F.2d 361, 367 (6th Cir. 1991) (rejecting appellate counsel's *post-hoc* rationalization for an agency's decision where no such explanation was enunciated in the decision, and holding that "[c]ourts are not at liberty to speculate on the basis of an administrative agency's order") (citations omitted). Accordingly, the Court declines to substitute the Commissioner's reasoning for the ALJ's failure to discuss or incorporate the need for frequent bathroom breaks in the RFC determination.

Thus, the proper review for the Court at this juncture of the case is whether upon remand, the ALJ could arrive at a different conclusion had the ALJ performed an analysis regarding the Plaintiff's need to have ready access to a bathroom. See Wilson, 378 F.3d at 546-47. Indeed, the Court finds that the ALJ could. This District has observed, for example, that "[i]f Plaintiff requires two restroom breaks of ten minutes every hour, there may be no jobs that she can perform. But if Plaintiff requires only one restroom break of five minutes every hour, perhaps she could perform some jobs." Green v. Astrue, No. 3:09-CV-331, 2010 WL 2901765, at *5 (E.D. Tenn. July 2, 2010) adopted by No. 3:09-CV-331, 2010 WL 2901762, at *1 (E.D. Tenn. July 20, 2010). Thus, the ALJ must not only determine whether the Plaintiff requires frequent bathroom breaks, but must also determine what constitutes frequent bathroom breaks, *i.e.*, how often and at what intervals the Plaintiff would need to use the bathroom.

Other courts have similarly held that where there is evidence that a claimant requires access to a bathroom as needed, an ALJ's RFC assessment should address the alleged limitation. See Hubbard v. Comm'r of Soc. Sec., No. 11-11140, 2012 WL 883612, at *7 (E.D. Mich. Feb.

11

27, 2012) adopted by No. 11-11140, 2012 WL 858636, at *1 (E.D. Mich. Mar. 14, 2012) (holding that "the problem with the ALJ's analysis is the failure to make any finding about whether plaintiff required additional unscheduled bathroom breaks beyond those that employers would 'normally' permit"); McNelis v. Comm'r of Soc. Sec., No. 08-12529, 2009 WL 3210713, at *6 (E.D. Mich. Sept. 29, 2009) (taking no position on whether the record may or may not support a finding of disability based on Plaintiff's allegation of frequent bathroom breaks, the court held that because the ALJ offered no analysis of the issue, the court was precluded from engaging in meaningful review and remand was warranted).

As a final matter, the Court notes that it also questions how the state agency physician's opinion, which was purportedly given great weight by the ALJ, supports an RFC of medium work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. As mention above and in the ALJ's decision, the state agency physician opined that the Plaintiff could only lift 10 pounds frequently, which is far less than the regulation's requirement. The state agency physician further opined against heavy lifting due to fecal incontinence. These inconsistencies with the regulations' requirements for medium work further diminish the Commissioner's position that the ALJ's RFC determination was supported by substantial evidence.

In conclusion, the Court finds the Plaintiff's allegation of error is well-taken and will recommend that this case be remanded to the ALJ to consider whether the requirement that the Plaintiff should have frequent bathroom breaks, as opined by Dr. Summers, is a credible work limitation. While the parties present some argument as to whether the ALJ properly relied on the Medical-Vocational Guidelines at step five of the sequential evaluation, or whether vocational expert testimony was necessary to make a step five determination, the Court need not address the

Case 3:13-cv-00454-CLC-HBG Document 18 Filed 07/30/14 Page 12 of 13 PageID #: 558

issue at this time. However, given the ambiguity that "frequent bathroom breaks" likely entails, the Court recommends that upon remand the ALJ solicit testimony from a vocational expert regarding the implications such limitation would have on the occupational base.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] be **GRANTED**, the Commissioner's Motion for Summary Judgment [**Doc. 15**] be **DENIED**, and this case be remanded to the ALJ to determine if the Plaintiff requires frequent bathroom breaks and the effect, if any, such limitation has on the Plaintiff's ability to work by consulting vocational expert testimony on the matter.

Respectfully submitted,

_____
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).